In the Matter of Michael A. WILKINS, Respondent.

No. 49S00–0005–DI–341.

Supreme Court of Indiana.

Feb. 4, 2003.

Ronald E. Elberger, Robert B. Clemens, Bose McKinney & Evans, G. Daniel Kelley, Jr., Thomas E. Mixdorf, Ice Miller, Indianapolis, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

Indiana Civil Liberties Union, Inc., Kenneth J. Falk, Indianapolis, IN, Defense Trial Counsel of Indiana, James D. Johnson, Evansville, IN, for Amici Curiae.

DISCIPLINARY ACTION
ON PETITION FOR REHEARING

DICKSON, Justice.

The respondent in this attorney discipline matter seeks rehearing following our *per curiam* opinion, *Matter of Wilkins*, 777 N.E.2d 714 (Ind.2002), which held that certain remarks in the respondent's brief supporting his petition for transfer in a prior case violated Indiana Professional Conduct Rule 8.2(a) and warranted his suspension from the practice of law for thirty days. His petition requests reconsideration of (1)

the application of the First Amendment protection to the offending remarks, and (2) the appropriate sanction to be imposed.

We dispose of these requests largely on the difference between sound advocacy and defamation. Lawyers are completely free to criticize the decisions of judges. As licensed professionals, they are not free to make recklessly false claims about a judge's integrity.

### I.

We decline to grant rehearing as to the First Amendment issue. Aside from First Amendment considerations, however, we acknowledge that important interests of judicial administration require considerable latitude regarding the content of assertions in judicial pleadings, motions, and briefs. Just as we must seek to preserve the public respect and confidence in the judiciary, in prescribing practice and procedures for the proper administration of justice we must also preserve the right of a party to access and use the judicial system to present a "good faith argument for an extension, modification, or reversal of existing law." Ind. Professional Conduct Rule 3.1. The Comment to Rule 3.1 observes: "[T]he law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change."

In *Orr v. Turco Mfg. Co., Inc.*, 512 N.E.2d 151 (Ind.1987), this Court emphasized the need for an appellate tribunal to use extreme restraint in stifling appellate advocacy: "[W]e cannot fail to recognize that the imposition of punitive sanctions does have significant negative consequences. . . . It will have a chilling effect upon the exercise of the right to appeal. It will discourage innovation and inhibit the opportunity for periodic reevaluation of controlling precedent." *Id.* at 152. Con-

cluding that "we must invite, not inhibit, the presentation of new and creative argument[,]" we held in *Orr* that "punitive sanctions may not be imposed to punish lack of merit unless an appellant's contentions and argument are utterly devoid of all plausibility." *Id.* at 153.

These considerations are limited, however, by Indiana Professional Conduct Rule 8.2(a), which provides in relevant part: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the . . . integrity of a judge. . . ." Our *per curiam* opinion noted that the respondent's brief suggested that the decision of the judges on the Court of Appeals resulted from unethical motivations. The offending language consisted of footnote 2 to his brief, stating:

> Indeed, the [Court of Appeals] Opinion is so factually and legally inaccurate that one is left to wonder whether the Court of Appeals was determined to find for Appellee Sports, Inc., and then said whatever was necessary to reach that conclusion (regardless of whether the facts or the law supported its decision).

*Wilkins,* 777 N.E.2d at 716.

The language of footnote 2 does not merely argue that the Court of Appeals decision is factually or legally inaccurate. Such would be permissible advocacy. The footnote goes further and ascribes bias and favoritism to the judges authoring and concurring in the majority opinion of the Court of Appeals, and it implies that these judges manufactured a false rationale in an attempt to justify their preconceived desired outcome. These aspersions transgress the wide latitude given appellate argument, and they clearly impugn the integrity of a judge in violation of Professional Conduct Rule 8.2(a). We decline to revise our determination that the respondent violated Rule 8.2(a).

## II.

We grant rehearing in part, however, as to the particular issue of the appropriate sanction to be imposed for this violation. Upon further reconsideration we are persuaded to revise the nature of the discipline.

■ As noted in our *per curiam* opinion, the respondent timely contacted the offices of both the Chief Judge of the Indiana Court of Appeals and the Chief Justice of Indiana, and thereafter wrote to both the Chief Judge and the Chief Justice "offering to apologize in person and to acknowledge that the footnote was 'overly-aggressive and inappropriate and should never have made its way into our Brief.'" *Wilkins*, 777 N.E.2d at 716.

We also give renewed consideration to the Hearing Officer's findings that the respondent has maintained an outstanding and exemplary record for honesty, integrity, and truthfulness among his peers in the Bar, and among members of the judiciary. This warrants substantial weight. Furthermore, although the respondent's role in signing and filing the brief constitutes joint responsibility pursuant to Indiana Admission and Discipline Rule 3(2)(d), we note that the language of the footnote was not authored by the respondent but by an out-of-state co-counsel.

We find unpersuasive, however, assertions that some other prominent American lawyers or judges may have engaged in similar techniques of argument. Such unfortunate occasional resorts to uncivil dialogue should not be our standard for acceptable Indiana pleading and practice.

Upon rehearing as to the sanction, we conclude that the respondent's penalty in this disciplinary proceeding should not consist of a period of suspension but rather only the public reprimand already effected by the content of our initial *per curiam* opinion.

Rehearing is granted in part and denied in part, and the respondent's sanction is revised from a thirty-day suspension from the practice of law to a public reprimand. Because we are only granting rehearing on a particular point, rather than a general rehearing, our *per curiam* opinion remains in effect except as modified herein. *See Griffin v. State*, 763 N.E.2d 450, 451 (Ind. 2002).

SHEPARD, C.J., concurs; BOEHM, J., concurs in result with separate opinion; RUCKER, J., not participating; SULLIVAN, J., dissents, believing respondent's conduct was speech protected by the First Amendment and so no sanction is permissible. *See In re Wilkins*, 777 N.E.2d 714 (Ind.2002) (Sullivan, J., dissenting).

BOEHM, Justice, concurring in result.

I continue to adhere to the view that the respondent did nothing that this Court should find sanctionable. Specifically, I believe the statements attributed to the respondent are protected by both the First Amendment to the Constitution of the United States and by Article I, Section 9 of the Indiana Constitution. Even if these statements were not constitutionally protected, for the reasons given in my original dissent, I would not find them to violate the Rules of Professional Responsibility. Therefore, I would grant rehearing on all aspects of the Court's initial opinion. However, there is no majority to grant rehearing on the sanction unless a public reprimand remains in place. For that reason, I concur in the result to impose a public reprimand rather than leave in place the thirty-day suspension already imposed.

The respondent's petition to rehear this matter arrives in an extremely unusual procedural posture. Although the full

court addressed the case initially, only four Justices remain to consider the petition to reconsider. If a majority votes to grant rehearing, the effect is to recall the former opinion, and Wilkins' case would be before us "as if it had never been decided." 2 Arch N. Bobbitt, *Indiana Appellate Practice and Procedure,* § 62:11, at 625 (1972); *see also Bally v. Guilford Township Sch. Corp.,* 234 Ind. 273, 275, 126 N.E.2d 13, 15 (1955); *Booher v. Goldsborough,* 44 Ind. 490, 496 (1873); Terrance L. Smith and Anthony DeBonis Jr., *Appellate Handbook for Indiana Lawyers,* § 19:8, at 302 (1987). If rehearing is granted on a single issue—in this case the proper sanction—the original opinion stands as to all other issues, and only the sanction is vacated. *Griffin v. State,* 763 N.E.2d 450 (Ind.2002).

The votes of the Chief Justice and Justice Dickson are to grant rehearing as to the sanction only, and to impose a public reprimand. Justice Sullivan and I would vote for no sanction at all. But if neither of us joins in the result reached by Justice Dickson and the Chief Justice, we have no majority to grant rehearing as to any aspect of the original opinion and Wilkins' thirty-day suspension stands. Lewis Carroll would love that result: half the Court believes no sanction is appropriate, and half would impose a small sanction, so the result is a major penalty. Only those who love the law could explain that to their children. To free parents everywhere from that burden, I concur in the result of granting rehearing as to the sanction and reducing it to a public reprimand.