R.C. BOGGS, Individually and on behalf of Carolyn Boggs, deceased, Appellant–Plaintiff,

v.

TRI–STATE RADIOLOGY, INC., Appellee–Defendant.

No. 82A04–9809–CV–450.

Court of Appeals of Indiana.

Sept. 7, 1999.

Mary Beth Ramey, Bonnie L. Foster, Ramey & Hailey, Indianapolis, Indiana, Attorneys for Appellant.

Douglas V. Jessen, Statham & McCray, Evansville, Indiana, Attorney for Appellee.

**OPINION**

ROBB, Judge

*Case Summary*

Appellant–Plaintiff, R.C. Boggs ("R.C."), individually and on behalf of his wife, Car-

olyn Boggs ("Carolyn"), appeals the trial court's dismissal of his medical malpractice claim against Appellee–Defendant, Tri–State Radiology, Inc. ("Tri–State"). We reverse and remand.

### Issues

R.C. raises four issues for our review. We find the following restated issue dispositive: whether the occurrence-based statute of limitations of the Indiana Medical Malpractice Act is unconstitutional as applied to R.C.[1]

### Facts and Procedural History

In the Summer of 1991, Carolyn notified her family physician, Dr. Oswald, that she detected a lump in her breast. Accordingly, Dr. Oswald ordered a mammogram which was read and interpreted by Dr. Pruitt on July 17, 1991. Dr. Pruitt is employed by Tri–State, a corporation composed of physicians who limit their practice to the specialty of radiology. Dr. Pruitt's report on the mammogram indicated as follows: "fibrocystic change is seen. No dominant masses or abnormal vascularity or calcifications are seen." (R. 25). R.C. alleges that the mammogram indicated breast cancer. On July 28, 1992, Carolyn obtained a second mammogram. This mammogram was also sent to Tri–State for review. The mammogram allegedly indicated significant growth in a preexisting mass, and therefore, the radiologist from Tri–State suggested that an excisional biopsy be performed. The biopsy was performed and revealed that Carolyn had stage IV breast cancer. Carolyn underwent several treatments; however, they proved unsuccessful, and she died from the cancer on July 28, 1993, at the age of fifty-two (52).

R.C., individually and on behalf of Carolyn, filed a medical malpractice claim against Tri–State on July 1, 1994, within two years of discovering Tri–State's alleged malpractice and eleven months after Carolyn's death. Tri–State filed a motion for preliminary determination,[2] alleging that R.C. was required to file his malpractice claim within two years of the occurrence of the malpractice pursuant to Indiana Code Section 34–18–7–1(b) (1998) (repealing section 27–12–7–1(b) (1993)) and that he failed to do so. The trial judge granted Tri–State's motion for preliminary determination, noting that R.C. discovered the malpractice on August 12, 1992, at which time he still had eleven months and five days to file his malpractice claim in accordance with Indiana Code Section 34–18–7–1(b). This appeal ensued.

### Discussion and Decision

#### Martin v. Richey and Van Dusen v. Stotts

R.C. argues that the occurrence-based statute of limitations is unconstitutional. We agree insofar as the statute is unconstitutional as applied to him.

The statute of limitations enunciated in the Indiana Medical Malpractice Act reads in pertinent part:

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect. . . .

Ind.Code § 34–18–7–1(b). This statute is an occurrence-based rather than a discovery-based statute of limitations. *See Martin v. Richey*, 711 N.E.2d 1273, 1278 (Ind. 1999).

Because we conclude that R.C. filed a timely complaint, we find it unnecessary to address this issue.

---

1. R.C. raises the additional issue of whether the trial court erred when it granted Tri–State's Motion for Preliminary Determination when discovery was incomplete and genuine issues of material fact exist pertaining to the application of the fraudulent concealment doctrine and the continuing wrong doctrine.

2. *See* Indiana Code § 34–18–11–1(a) (1998) (repealing section 27–12–11–1(a) (1993)).

Since the inception of this appeal, our supreme court handed down its decision in *Martin v. Richey*. In *Martin*, the plaintiff was unable to discover that she had breast cancer until after the two-year occurrence-based statute of limitations had run. The *Martin* court held that the statute of limitations was unconstitutional as applied to the plaintiff on two grounds. First, the *Martin* court held that the statute of limitations violates Indiana Constitution, Article I, Section 23, as applied to the plaintiff "because it is not 'uniformly applicable' to all medical malpractice victims...." *Id.* at 1279. Second, the *Martin* court held the statute of limitations violates Indiana Constitution, Article I, Section 12 "because it requires plaintiff to file a claim before she is able to discover the alleged malpractice and her resulting injury, and, therefore, it imposes an impossible condition on her access to the courts and pursuit of her tort remedy." *Id.*

In a companion case, our supreme court reemphasized that the occurrence-based statute of limitations is not unconstitutional, but only unconstitutional as applied to the particular plaintiffs. *Van Dusen, M.D. v. Stotts*, 712 N.E.2d 491, 493 (Ind.1999). In *Van Dusen*, the plaintiff was also besieged by a disease the latency of which made it impossible for him to discover the malpractice until after the two-year occurrence-based statute of limitations had run. The *Van Dusen* court faced the additional issue of how the statute of limitations could be constitutionally applied. Our supreme court concluded that the statute should apply to limit the time in which such plaintiffs can make a claim against their physician to two years from the discovery of the malpractice or two years from when the plaintiff should have discovered the malpractice using reasonable care and due diligence, whichever is earlier. *Id.* at 497. Thus, our supreme court in *Martin* and *Van Dusen* determined that in order for the statute to be constitutionally applied, the occurrence-based statute of limitations would be interpreted to run from the date of discovery for the particu-

lar class of plaintiffs represented by those two cases.

R.C. represents a different class of plaintiffs, however. Unlike the plaintiffs in *Martin* and *Van Dusen*, he and his wife discovered Tri–State's alleged malpractice within two years of the alleged malpractice. In fact, R.C. had eleven months following this discovery to file his claim in accordance with the Medical Malpractice Act. The trial court concluded as much and rested his judgment of dismissal, in part, on this fact. Applying *Martin* and *Van Dusen* to the facts of this case, therefore, is somewhat problematic as the decisions in those cases were written in specific rather than general terms. The language in *Van Dusen* on how to apply the *Martin* decision states:

We, however, determined in *Martin* that the statute is not unconstitutional on its face and have declared *only that certain applications are unconstitutional.*

* * * *

Rather than simply ignoring the statute of limitations and its two-year time period, as defendants would have us do, the better course is to construe or reconstrue the statute in such a way as to further the purposes of the legislature without offending the Indiana Constitution. To the extent that the legislature intended to create a statute of limitations that *always* runs from the date of the occurrence of the alleged negligent act, *even when* the malpractice and resulting injury cannot be discovered during the limitations period given the nature of the asserted malpractice and the medical condition, then, of course, we cannot effectuate this particular legislative intent without doing violence to the Indiana Constitution.

* * * *

We construe section 34–18–7–1(b) to permit plaintiffs like Martin and the Stottses—that is, *plaintiffs who, because they suffer from cancer or other similar diseases or medical conditions with long*

*latency periods and are unable to discover the malpractice and their resulting injury within the two-year statutory period*—to file their claims within two years of the date when they discover the malpractice and the resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury.

*Van Dusen,* 712 N.E.2d at 496–97 (emphasis added). We conclude from this language that our supreme court's holding was specifically limited to plaintiffs who could not have discovered the malpractice within the occurrence-based statute of limitations. The issue before this court, and one we believe was left open by *Martin* and *Van Dusen,* is: whether plaintiffs who discover the malpractice during the occurrence-based statute of limitations but file their claim after the same has expired may also bring their action within two years of discovering the malpractice. We conclude that they may.

### *Indiana Constitution, Article I, Section 12*

■ We begin by noting that under the *Martin* court's analysis of Article I, Section 12, of the Indiana Constitution, the Open Courts Law Clause, R.C. cannot successfully challenge the constitutionality of the occurrence-based statute of limitations as applied to his case.[3] Section 12 states as follows:

All courts shall be open; and every person for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely and without denial; speedily, and without delay.

Ind. Const. art. I, § 12.

The *Martin* court declared the occurrence-based statute of limitations unconsti-

tutional as applied to the plaintiff in that case only because the plaintiff could not have discovered the alleged malpractice until the statute had run:

If Section 12 has any meaning at all, it must preclude the application of a two-year medical malpractice statute of limitations *when a plaintiff has no meaningful opportunity to file an otherwise valid tort claim within the specified statutory time period because, given the nature of the asserted malpractice and the resulting injury or medical condition, plaintiff is unable to discover that she has a cause of action.*

*Martin,* 711 N.E.2d at 1284. R.C. has not developed an argument regarding how the occurrence-based statute of limitations is unconstitutional pursuant to Section 12 as applied to him, or more specifically, why he did not have a meaningful opportunity to file his claim. He only suggests that for those plaintiffs who discover the malpractice "with some days or months left before the expiration of the two year period, the limited time remaining is often a practical bar to suit. Medical malpractice victims are often ill, seeking treatment, or dying." Appellant Boggs' Brief on Appeal at 11. R.C.'s point is well taken; however, as noted, our supreme court has held that the statute of limitations survives Section 12 scrutiny; it will only fail constitutional muster as applied to a particular plaintiff. *See id.* at 1283–84. As R.C. has not demonstrated that the occurrence-based statute of limitations denied *him* a meaningful opportunity to file his claim and as R.C. had eleven months within which to file his complaint in accordance with the occurrence-based statute of limitations, we must conclude that pursuant to Section 12, the occurrence-based statute of limitations is not unconstitutional as applied to him.

---

**3.** In *Martin,* our supreme court limited its analysis of the plaintiff's claim under Section 12 to exclude the significance of the language in Section 12 referring to 'Due Course of Law' because the plaintiff did not include

such language in her argument. 711 N.E.2d at 1283 n. 10. As R.C. has likewise excluded such an argument, we decline to explore the ramifications of this language on the facts of his case.

### Indiana Constitution, Article I, Section 23

■ Nevertheless, we conclude that the occurrence-based statute of limitations is unconstitutional as applied to R.C. pursuant to Article I, Section 23 of the Indiana Constitution, the Privileges and Immunities Clause. That provision of our constitution states: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Ind. Const. art. I, § 23.

Our supreme court has held that where the legislature seeks to grant a citizen or class of citizens a privilege or immunity, the statute will be unconstitutional under Section 23 unless two prerequisites are met. First, the unequal treatment accorded by the statute must be reasonably related to the inherent characteristics which distinguish the unequally treated classes. *Collins v. Day*, 644 N.E.2d 72, 80 (Ind. 1994). Second, any privileged classification must be equally open and equally extended to any and all persons who share the inherent characteristics which distinguish and justify the classification. *Id.* at 79–80.

The *Martin* court noted that the medical malpractice statute of limitations satisfies the first prerequisite of Section 23 as outlined in *Collins*. *Martin*, 711 N.E.2d at 1280–81. In so concluding, the *Martin* court acknowledged that the Medical Malpractice Act creates a classification scheme which distinguishes between victims of medical malpractice and victims of other torts; however that court also noted that the additional burden placed on medical malpractice plaintiffs is rationally related to the legislature's "goal of maintaining sufficient medical treatment and controlling malpractice insurance costs in Indiana...." *Id.* at 1281.

On the other hand, the *Martin* court also concluded that the medical malpractice statute of limitations did not satisfy the second prerequisite because the "medi-

cal malpractice statute of limitations is not 'uniformly applicable' to all medical malpractice victims." *Id.* Rather, the court found that the statute impliedly creates two subclassifications of medical malpractice plaintiffs. *Id.* One class represents those plaintiffs who can discover the malpractice and their resulting injury within the two year occurrence-based statute of limitations, and another represents plaintiffs like those in *Martin* and *Van Dusen* who cannot. *See id.* Because the terms of the statute do not expressly create this classification, however, the statute was determined to be unconstitutional under Section 23 only as applied to the plaintiffs who could not discover the malpractice and their resulting injury within the two year occurrence-based statute of limitations and therefore were unable to bring a claim. *Id.* at 1281–82.

■ There are two possible interpretations of *Martin* and *Van Dusen*. The first interpretation would only apply the medical malpractice statute of limitations as construed by the *Van Dusen* court to those plaintiffs who could not have discovered the alleged malpractice within two years of the same. The second interpretation would be simply to apply the two year discovery-based statute of limitations to all medical malpractice plaintiffs. We conclude that the latter reading more appropriately applies the rationale behind our supreme court's holdings in *Martin* and *Van Dusen*.

If we suppose for the sake of argument that Indiana Code Section 34–18–7–1(b) would still require those plaintiffs who could discover the malpractice within its two-year occurrence-based statute of limitations to bring their action in whatever time remained to file, the resulting interpretation of the medical malpractice statute would again create two subclassifications. The first group of plaintiffs are represented by the plaintiffs in *Martin* and *Van Dusen*; namely, those plaintiffs who could not discover the malpractice and

their resulting injury within two years of its occurrence. Pursuant to *Van Dusen*, such plaintiffs would have two years from discovery to file their claim. The second group of plaintiffs are represented by R.C.: those plaintiffs who can discover the malpractice and their resulting injury within two years of its occurrence. For plaintiffs like R.C., the time limit for bringing their action could be anywhere from two years, if they were lucky enough to discover the malpractice and their resulting injury on the day it was incurred, to an infinitesimally small amount of time, perhaps measured in units as small as hours or minutes.

Based on this construction of the medical malpractice statute of limitations and this interpretation of *Martin* and *Van Dusen*, one could imagine two plaintiffs: one discovers the malpractice and his resulting injury one day before the occurrence-based statute of limitations expires; and another discovers the malpractice and his resulting injury one day after the occurrence-based statute of limitations expires. The problem is obvious: the first tort victim has only one day to comprehend his cause of action, find counsel, and then file his action, whereas the second tort victim has two years to do so. Not only does such hairsplitting constitute questionable public policy, it violates the constitutional principle enunciated in *Collins* and *Martin:* a privileged classification must be equally open and extended to similarly situated plaintiffs. *Martin*, 711 N.E.2d at 1280–81. Unquestionably, plaintiffs like R.C. are similarly situated to those like the plaintiffs in *Martin* and *Van Dusen*. Both sets of plaintiffs are medical malpractice plaintiffs who, for whatever reason, could not discover the malpractice and their resulting injury on the day it was incurred. The *Martin* decision attempted to eliminate this classification insofar as it allowed the plaintiff to file her claim within two years of the discovery of the malpractice and her resulting injury. If we limit this discovery-based construction of Indiana Code Section 34–18–7–1(b) to only these

plaintiffs, however, the classification persists in a different, albeit less harsh, but no less irrational form: plaintiffs who cannot discover the malpractice and their resulting injury within two years of its occurrence have a full two-years to pursue their claim, whereas plaintiffs who discover the malpractice and their resulting injury within two-years of its occurrence may have only months, weeks, even hours to pursue the same.

In short, the legislature may create a classification, but that classification "must embrace all who possess the attributes or characteristics which are the basis of classification, and their difference from those excluded must be substantial and related to the purpose of the legislation." *Collins*, 644 N.E.2d at 79, *quoting Heckler v. Conter*, 206 Ind. 376, 381, 187 N.E. 878, 879–80 (1933). As the *Martin* court stated, the Medical Malpractice Act created a separate classification for medical malpractice plaintiffs in order to maintain sufficient medical treatment and control malpractice insurance costs. *Martin*, 711 N.E.2d at 1281. We conclude that the subclassification which would be created by limiting our supreme court's construction of the medical malpractice statute of limitations as discussed above is not substantially or reasonably related to these ends. We further conclude that the supreme court did not intend such a limitation but directed its holding only to address the particular plaintiffs of those cases, leaving open the question herein presented.

*Conclusion*

Having construed the medical malpractice statute of limitations and our supreme court's decisions in *Martin* and *Van Dusen* in this manner, our next task is to determine whether R.C. filed his complaint in accordance therewith. As stated in *Van Dusen*, "the question of when a plaintiff discovered facts which, in the exercise of reasonable diligence, should lead to the

discovery of the malpractice and resulting injury, is often a question of fact." *Van Dusen,* 712 N.E.2d at 499. Based on the evidence in the record, there are two possible dates that could have triggered the statute of limitations. The first date is July 28, 1992, when Carolyn and R.C. became aware of a potential problem with Carolyn's mammogram. The second date is August 12, 1992, when an excisional biopsy revealed that Carolyn had breast cancer. R.C. filed his complaint on July 1, 1994 which was less than two years from either date, and therefore, he filed his complaint in accordance with the medical malpractice statute of limitations as construed by this court regardless of which date is used. Thus, we find no need to determine the exact date on which Carolyn and R.C. knew or should have known of the alleged malpractice and their resulting injury. *See id.* at 497–98 (stating that the plaintiff filed his complaint in a timely fashion because he filed the complaint within two years of either of two possible trigger dates and that the court's subsequent determination of the proper trigger date was made "because the rule we announce today may become especially important in other cases").

Accordingly, we conclude that the medical malpractice statute of limitations contained in Indiana Code Section 34–18–7–1(b) is unconstitutional as applied to R.C. under Article I, Section 23, the Privileges and Immunities Clause. Therefore, we reverse the trial court's order of Preliminary Determination in favor of Tri–State and remand for proceedings consistent with this opinion.

Reversed and remanded.

SHARPNACK, C.J., and DARDEN, J., concur.